1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2   Including Professional Corporations
    ROBERT MUSSIG, Cal. Bar No. 240369
3   DEVIN S. LINDSAY, Cal. Bar No. 324967
    EMMA HUSSEMAN, Cal. Bar No. 347097
4   333 South Hope Street, 43rd Floor
    Los Angeles, California 90071-1422
5   Telephone:  213.620.1780
    Facsimile:  213.620.1398
6   E mail      rmussig@sheppardmullin.com
                dlindsay@sheppardmullin.com
7               ehusseman@sheppardmullin.com

8   Attorneys for Defendant
9   GAT AIRLINE GROUND SUPPORT,
    INC.

10

11

12              UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15 MARCELINA PEREYRA, individually, and on behalf of all other 16 similarly situated, | Case No.: '23CV2195 MMA MMP |
| 17                     Plaintiff, | [San Diego Superior Court Case No . 7-2023-00046746-CU-OE-CTL] |
| 18          v. | **DEFENDANT GAT AIRLINE GROUND SUPPORT, INC.'S** |
| 19 GAT AIRLINE GROUND SUPPORT, INC., and DOES 1 through 10, 20 inclusive, | **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, 1446, 1453** |
| 21                   Defendants. | |
| 22 | Complaint filed:      October 26, 2023 |

23

24

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant GAT Airline Ground Support, Inc. hereby removes the above-entitled action, <u>Marcelina Pereyra v. GAT Airline Ground Support, Inc.</u>, pending in the Superior Court of California, County of San Diego, Case No. 7-2023-00046746-CU-OE-CTL to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446. This Court has original subject matter jurisdiction over Plaintiff Marcelina Pereyra's lawsuit pursuant to the Class Action Fairness Act of 2005 ("CAFA") because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper for the following reasons:

## I.    BACKGROUND AND PLEADINGS

1.      On October 26, 2023, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Diego (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.      Plaintiff's Complaint asserts twelve causes of action against Defendant: (1) minimum wage violations; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) paid sick leave violations; (6) unpaid vacation wages; (7) untimely payment of wages; (8) wage statement violations; (9) waiting time penalties; (10) failure to reimburse business expenses; (11) failure to provide records; and (12) unfair competition.

3.      On November 1, 2023, Plaintiff served a copy of the Summons and Complaint and other accompanying documents on Defendant. True and correct copies of the (1) Summons, (2) Complaint, (3) Civil Case Cover Sheet,  (4) Notice

-1-

NOTICE OF REMOVAL

of Case Assignment and Case Management Conference, and (5) proof of personal service are attached hereto as **Exhibit B**.

4.      On November 30, 2023, Defendant filed its Answer to Plaintiff's unverified Complaint. Defendant has not filed any other pleadings or papers in this action. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit C**.

5.      The exhibits listed above constitute all prior pleadings and documents filed in the state court in this matter.

## II.      TIMELINESS OF REMOVAL

6.      As required by 28 U.S.C. § 1446(b), Defendant has timely filed this Notice of Removal.

7.      The time for filing a Notice of Removal does not commence until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or if the case alleged in the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; see also Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 374-48 (1999) (holding that the 30-day window to remove does not commence until formal service of the summons and complaint is complete under state law).

8.      The service of process which triggers the 30-day period to remove is governed by state law. City of Clarksdale v. BellSouth Telecomms., Inc., 428 F.3d 206, 210 (5th Cir. 2005) ("the term 'service of process' is defined by state law.").

9.      The 30-day time limit to remove was triggered by Plaintiff's service of the Summons and Complaint on November 1, 2023. See Exh. B.

10.     This Notice of Removal is timely because it has been filed within 30 days after personal service of the Complaint on Defendant on November 1, 2023. See Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal

delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).

### III.   CLASS ACTION FAIRNESS ACT

11.    This Court has original jurisdiction over this matter under CAFA, which is codified in pertinent part in 28 U.S.C. §1332(d)(2). This action is properly removable pursuant to the provisions of 28 U.S.C. § 1441(a), in that: (1) the proposed civil class action contains at least 100 putative class members; (2) the defendant is not a state, state official, nor other governmental entity; (3) the aggregate amount in controversy exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6); 332(d)(5)(B).

### A.   Plaintiff And Defendant Are Minimally Diverse

12.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction. At least one purported class member must be a citizen of a state different from any named defendant. See 28 U.S.C. § 1332(d)(2)(A). Here, Plaintiff is a citizen of a state (*i.e.*, California) that is different from the state of citizenship of the Defendant (*i.e.*, Alabama and Georgia). See Declaration of Patrick Daniel in Support of Defendant's Notice of Removal ("Daniel Decl.") ¶ 6.

### 1.   Plaintiff Is A Citizen Of California

13.    To establish citizenship for diversity purposes, a natural person must be both a citizen of the United States and a domiciliary of one particular state. Kantor v. Wellesley Galleries, Inc., 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state."). Residence is *prima facie* evidence of domicile. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is *prima facie* the domicile"); see also Zavala v. Deutsche Bank Trust Co. Americas, No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013)

(where a plaintiff's complaint alleges she resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. <u>Armstrong v. Church of Scientology Int'l</u>, 243 F.3d 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing <u>Lew v. Moss</u>, 797 F.2d 747, 750 (9th Cir. 1986)).

14.    Plaintiff provided Defendant with her home address during the course of her employment for purposes of her personnel file, payroll checks, state payroll, and tax withholdings. Daniel Decl., ¶ 6. Defendant's review of Plaintiff's personnel file during her employment reveals that Plaintiff resided in San Diego, California. <u>Id.</u>

15.    Plaintiff's intent to remain domiciled in California is evident from the fact that she brought her lawsuit against Defendant in San Diego Superior Court. Plaintiff therefore is and was at the initiation of this civil action, a citizen and resident of the State of California.

## 2.    Defendant Is Not A Citizen Of California

16.    Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). Moreover, Defendant is not a state, state official, or government entity.

17.    For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. <u>See</u> 28 U.S.C. § 1332(c)(1). The "'principal place of business' refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 80-81, 92-93 (2010). The relevant considerations under the "nerve center" test include the following: (a) where the directors and stockholders meet; (b) where the executives live and have their offices; (c) where the

-4-

administrative and financial offices are located and the records kept; (d) where the corporate income tax return is filed; (e) where the "home office" is located; and (f) where day-to-day control of the business is exercised. <u>See</u> <u>Ho v. Ikon Office Solutions, Inc.</u>, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (holding the nerve center to be the location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

18.    Defendant is, and has been, incorporated under the laws of Alabama. Daniel Decl., ¶ 3. Defendant's principal place of business is in Peachtree City, Georgia. <u>Id.</u> at ¶ 4. GAT Airline Ground Support, Inc.'s corporate headquarters is in Peachtree City, Georgia.  That is where the majority of its executive and administrative functions are performed, where its corporate offices and executives are located, and where its high-level officers direct, control, and coordinate the company's activities. <u>Id.</u> As such, Defendant's corporate headquarters and nerve center were, at the time of filing of the state court action, and remain to date, located in Peachtree City, Georgia.

19.    Therefore, the minimal diversity requirement under CAFA is satisfied because Plaintiff is a citizen of California and Defendant is a citizen of Alabama and Georgia. 28 U.S.C. § 1332(c)(1).

### 3.    The Citizenship Of The Doe Defendants Must Be Disregarded

20.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. <u>Fristos v. Reynolds Metals Co.</u>, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); <u>Soliman v. Philip Morris, Inc.</u>, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 10, inclusive, does not deprive this Court of jurisdiction.

<u>Abrego v. Dow Chemical Co.</u>, 443 F.3d 676, 679-80 (9th Cir. 2006) (holding that the citizenship of fictitious defendant is disregarded in removals pursuant to CAFA).

### B.    The Amount In Controversy Exceeds The Statutory Minimum

21.    CAFA requires that the aggregate amount in controversy for the class members' claims exceed the sum or value of five million dollars ($5,000,000.00). 28 U.S.C. § 1332(d)(6). By demonstrating that the amount in controversy exceeds this threshold, Defendant does not concede the validity of Plaintiff's claims nor the likelihood that Plaintiff will recover anything.

22.    Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. In <u>Standard Fire Ins. Co. v. Knowles</u>, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996); <u>see also</u> <u>Schiller v. David's Bridal, Inc.</u>, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010).

23.    To satisfy this standard, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S.Ct. 547, 554 (2014). A defendant need not set forth evidence establishing the amount in its notice of removal. <u>Id.</u> A defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." <u>Korn v. Polo Ralph Lauren Corp.</u>, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); <u>see also</u> <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir.2004) ("the parties need not predict the trier of fact's eventual award."). "[A] defendant satisfies the amount-in-controversy requirement under CAFA if it is *reasonably possible* that it

may be liable for the proffered [] damages amount." <u>Greene v. Harley Davidson</u>, 2020 WL 3969285 (9th Cir. 2020).

24.    "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." <u>Henry v. Cent. Freight Lines, Inc.</u>, 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." <u>Lewis v. Verizon Communs., Inc.</u>, 627 F.3d 395, 400 (9th Cir. 2010); <u>see also</u> <u>Muniz v. Pilot Travel Centers LLC</u>, 2007 WL 1302504, at *3 (E.D. Cal. 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe") (original emphasis); <u>see also</u> <u>Coleman v. Estes Express Lines, Inc.</u>, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe"), aff'd by 631 F.3d 1010, (9th Cir. 2011)).

25.    The Ninth Circuit has held the amount in controversy is determined "at the time of removal." <u>Kroske v. US Bank Corp.</u>, 432 F.3d 976, 980 (9th Cir. 2005) (quoting <u>Singer v. State Farm Mut. Auto. Ins. Co.</u>, 116 F.3d 373, 376 (9th Cir. 1997). However, in <u>Chavez v. JPMorgan Chase</u>, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit also held that the fact "the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." <u>Chavez</u>, 888 F.3d at 417 (original emphasis). Pursuant to <u>Chavez</u>, "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." <u>Id.</u> at 414-15.

26.    As established by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir. 2004); <u>see also</u> <u>Rodriguez v. AT & T Mobility Servs. LLC</u>, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); <u>Guglielmino v. McKee Foods Corp.</u>, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

27.    If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100%, except where the plaintiff specifically alleges otherwise. <u>Muniz v. Pilot Travel Ctrs. LLC</u>, 2007 WL 1302504, at *4 (E.D. Cal., May 1, 2007) (citing <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)); <u>see also</u> <u>Soratorio v. Tesoro Ref. and Mktg. Co., LLC</u>, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); <u>Arreola v. The Finish Line</u>, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); <u>Coleman</u>

v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

28.     Similarly, numerous other Ninth Circuit District Courts have concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. See Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (holding that where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); Franke v. Anderson Merchandisers LLC, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); Feao v. UFP Riverside, LLC, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d, 1025 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); Jones v. Tween Brands, Inc., 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (implementing a 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

29.     Here, the Complaint asserts twelve causes of action against Defendant: (1) minimum wage violations; (2) failure to pay all overtime wages; (3)meal period violations; (4) rest period violations; (5) paid sick leave violations; (6) unpaid

vacation wages; (7) untimely payment of wages; (8) wage statement violations; (9) waiting time penalties; (10) failure to reimburse business expenses; (11) failure to provide records; and (12) unfair competition.

30.     Plaintiff's Complaint seeks to certify the following class: "All current and former non-exempt employees who worked for Defendant in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification." Exh. A, Compl., ¶ 15(a). As such, for purposes of this Notice of Removal, the relevant time period is **May 1, 2019 to present**.

31.     As set forth below, the amount in controversy for both the class and the subclass[1] significantly exceeds $5,000,000.00.

32.     During the time period identified in the Complaint, the putative class consisted of approximately 3,386 non-exempt employees, who worked a total of approximately 134,640 workweeks. Daniel Decl., ¶ 8. The average hourly rate of pay for these individuals is approximately $16.72 per hour during the proposed class period. Id.

33.     Plaintiff alleges that for her and every other member of the putative class, Defendant uniformly (1) failed to pay Plaintiff and the class for all hours worked (including minimum wages and overtime wages), (2) failed to provide Plaintiff and the class with uninterrupted meal periods, (3) failed to authorize and permit Plaintiff and the class to take uninterrupted rest periods, (4) failed to indemnify Plaintiff and the class for necessary business expenses, (5) failed to timely pay all final wages to Plaintiff and the class when Defendant terminated Plaintiff and the class members' employment, and (6) failed to furnish accurate wage statements to Plaintiff and the class. Exh. A, Compl., ¶¶ 19-28.  Plaintiff alleges that she and other class members earned commissions and other non-

---

[1] Pereyra references a reimbursement subclass under her reimbursement cause of action, but she doesn't develop it in her class definition section or anywhere else.

discretionary pay, and that Defendant did not include this income in its regular rate calculation for purposes of overtime, sick leave, and premium wages. Id. at ¶¶ 19, 21. For most of these claims, there are no allegations indicating the purported violations occurred only "sometimes."

34.    Plaintiff seeks to recover, on behalf of herself and the alleged class, general unpaid wages, meal period premiums, rest period premiums, reimbursement of business expenses, waiting time penalties, wage statement penalties, prejudgment interest, liquidated damages, restitution, attorney's fees and costs. Exh. A, Compl., ¶¶ 13, 42, 57, 62, 66, 71, 75, 78, 92, Prayer for Relief.

35.    **<u>Defendant provides the following calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount in controversy under CAFA. Defendant makes no admission of any liability nor damages with respect to any aspect of this case, nor as to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.</u>**

1.    **Failure to Pay Minimum Wages**

36.    In her first cause of action, Plaintiff alleges that Defendant "willfully failed in [its] affirmative obligation to pay Plaintiff and class members at least the lawful minimum wage for each hour worked." Exh. A, Compl. ¶ 32.

37.    Based on the above allegation, Plaintiff alleges Defendant "deprived Plaintiff and class members of minimum, regular and overtime wages. . ." Exh. A, Compl. ¶ 33.

38.    Plaintiff does not, however, provide any details as to how Defendant allegedly undercompensated her and the proposed class, or how many hours per day or week she and the putative class members allegedly worked without compensation.

39.     The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years. <u>See</u> Cal. Code Civ. § Proc. 338. Plaintiff's UCL claim, however, extends the liability period for the recovery of minimum wages to four years. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued."). For determining the amount in controversy for Plaintiff's minimum wage claim, the UCL's four-year statute of limitations applies.

40.     Although Defendant denies Plaintiff's allegation that she and the putative class are entitled to relief, it is reasonable to assume, based on the language in the Complaint, that Plaintiff alleges that employees worked at least 60 minutes of unpaid time per workweek, which amounts to a mere 12 minutes per shift worked for full-time employees.

41.     Defendant employed approximately 3,386 current or former nonexempt employees from May 1, 2019 to present. Daniel Decl., ¶ 8. Those employees worked approximately 134,640 workweeks during that time period. <u>Id</u>. As such, the reasonable estimate of the amount placed in controversy by Plaintiff's minimum wage claim is **$2,251,180.80** [($16.72/hour * 1 hour per week * 134,640 workweeks].

**2.     Failure to Pay Overtime Wages**

42.     In her second cause of action, Plaintiff alleges that Defendant "failed in [its] affirmative obligation to pay Plaintiff and class members no less than one and a half times their respective 'regular rate of pay' for all hours worked in excess of eight hours in a day, 40 hours in a week, or the first 8 hours worked on the seventh day of work in any one workweek, and no less than twice their respective 'regular rate of pay' for all hours over 12 hours in a day and any work in excess of eight hours on any seventh day of a workweek for such hours worked." Exh. A, Compl. ¶ 36.

43.     Based on the above contention, Plaintiff alleges she "and the class members are entitled to recover the full amount of unpaid overtime, in addition to interest, statutory and civil penalties and attorneys' fees, and costs . . ." Exh. A, Compl. ¶ 37.

44.     Plaintiff does not, however, provide any details as to how Defendant allegedly undercompensated her and the proposed class, or how many overtime hours per day or week she and the putative class members allegedly worked without compensation.

45.     The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years. See Cal. Code Civ. § Proc. 338. Plaintiff's UCL claim, however, extends the liability period for the recovery of overtime wages to four years. See Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued."). For determining the amount in controversy for Plaintiff's overtime claim, the UCL's four-year statute of limitations applies.

46.     Although Defendant denies Plaintiff's allegation that she and the putative class are entitled to relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, 30 minutes of unpaid overtime per week, which amounts to a mere six minutes per shift worked.

47.     Defendant employed approximately 3,386 current or former nonexempt employees from May 1, 2019 to present. Daniel Decl., ¶ 8. Those employees worked approximately 134,640 workweeks. Id. As such, the reasonable estimate of the amount placed in controversy by Plaintiff's overtime claim is **$1,688,385.60** [($16.72/hour * 0.5 hours per week * 134,640 workweeks * 1.5 OT premium)].

**3.     Meal And Rest Period Claims**

48.     Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period or a rest period. See Lyon v. W.W.

-13-

1    Grainger, Inc., 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor

2    Code section 226.7 provides recovery for one meal break violation per workday and

3    one rest break violation per workday). The statute of limitations for recovery for

4    meal or rest period premium pay under California Labor Code section 226.7 pay is

5    three years. Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1099 (2007)

6    ("[T]he remedy provided in Labor Code in the Complaint, Defendant will

7    conservatively assume that putative class members were not provided just one meal

8    period and one rest period each workweek."). However, Plaintiff's UCL claim

9    arguably extends the liability period for any alleged meal and rest period violations

10   to four years. See Cal. Bus. & Prof. Code § 17208; see also Naranjo v. Spectrum

11   Sec. Servs., Inc., 13 Cal. 5th 93, 110, 509 P.3d 956 (2022). As such, the UCL's

12   four-year statute of limitations applies when determining the amount in controversy

13   for these claims.

14       49.    For her third claim, Plaintiff alleges that Defendant failed "to

15   consistently provide Plaintiff and the class members compliant, duty free meal

16   periods . . ." Exh. A, Compl. ¶ 40. For her fourth claim, Plaintiff alleges that

17   Defendant failed "to consistently authorize and permit Plaintiff and class members

18   to receive compliant, duty free rest periods …" Id. at ¶ 45. For both claims, Plaintiff

19   alleges that she and the putative class are entitled to be paid one hour of additional

20   wages for each workday he or she was not provided a meal and/or rest period. Id. at

21   ¶¶ 41, 42, 46.

22       50.    Furthermore, Plaintiff alleges that her claims are "typical of the claims

23   of the other class members." Exh. A, Compl. ¶ 17(b).

24       51.    Because Plaintiff alleges that "[she] and class members suffered several

25   late, short, missed, or interrupted meal and rest periods" and that "[she] and class

26   members frequently worked through all or part of their meal and rest periods" (Exh.

27   A, Compl. ¶ 23), Defendant will conservatively assume that Plaintiff alleges that

28   putative class members were not provided two meal periods and two rest periods

each workweek (which is merely a 40 percent violation rate for meal periods and 20 percent violation rate for rest periods, assuming normal 8-hour shifts).

52.    Assuming that Defendant's non-exempt employees in California during the relevant time period were not provided two meal periods and two rest periods each workweek, the amount placed in controversy by Plaintiff's meal and rest period claims is **$9,004,723.20** [($16.72/hour * 2 meal period premium payments * 2 rest period premium payments * 134,640 workweeks)].

**4.    Waiting Time Penalties Claim**

53.    Pursuant to Labor Code § 203, a willful failure to pay all wages due at the time of termination or resignation results in a penalty of continued wages for each day a former employee is not paid, up to a thirty day maximum. See Cal. Lab. Code § 203(a). The statute of limitations for Plaintiff's waiting time penalties claim is three years. Cal. Lab. Code § 203(b); Pineda v. Bank of Am., N.A., 50 Cal.4th 1389, 1390 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338 . . . [the employee has] three years to sue for the unpaid final wages giving rise to the penalty").

54.    Plaintiff alleges that Defendant "failed and continue[s] to fail . . . to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment. . ." Exh. A, Compl., ¶ 74.

55.    From May 1, 2020 to present, 1876 non-exempt employees were separated from their employment with Defendant. Daniel Decl., ¶ 9. Assuming each putative class member averaged a work schedule of eight hours per day, a reasonable estimate of the amount in controversy for waiting time penalties is approximately **$7,528,012.80** [$16.72 per hour * 8 hours/day *30 days * 1876 former employees].

**5.    Failure to Provide Accurate Wage Statements**

56.    In addition, Plaintiff alleges that she and the putative class were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226.

57.    Plaintiff alleges that Defendant failed to "provide accurate itemized wage statements to Plaintiff and class members . . ." Exh. A, Compl. ¶ 69.

58.    Conservatively assuming Plaintiff alleges that at least half the class members experienced a sufficient number of wage statement violations to reach the maximum penalty, the amount placed in controversy is at least 1,693 x $4000 = **$6,772,000.00**.  Labor Code section 226(e)(1) (maximum penalty is $4,000).

**6.    Failure to Reimburse Business Expenses**

59.    Labor Code section 2802 requires an employer to reimburse employees for all business expenses incurred by the employee in direct consequence of the discharge of his or her duties or of his or her obedience to the directions of the employer.

60.    Plaintiff alleges that Defendant failed "to pay Plaintiff and a reimbursement subclass for all necessary expenditures, losses, expenses, and costs incurred to them in direct discharge of their duties of their employment. . ." Exh. A, Compl. ¶ 77. Plaintiff claims that Defendant failed to reimburse necessary travel expenses. Exh. A, Compl. ¶¶ 27-28.

61.    Plaintiff's minimum wage, overtime, meal period, and rest period claims already total over the $5 million jurisdictional minimum as required by CAFA. Thus, Plaintiff's claim for failure to reimburse business expenses further increases the amount in controversy beyond the jurisdictional minimum of $5 million.

62.    Based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is at least approximately **$27,244,302.40**, calculated as follows:

NOTICE OF REMOVAL

· **$2,251,180.80** Unpaid Minimum Wage Claim
· **$1,688,385.60** Overtime Claim
· **$9,004,723.20** Meal/Rest Period Claims
· **$7,528,012.80** Waiting Time Penalties Claim
· **$6,772,000.00** Wage Statement Claim

63.     As such, the amount in controversy requirement under CAFA is satisfied.

**7.    Attorneys' Fees**

64.     Plaintiff also seeks attorneys' fees. Exh. A, Compl. Prayer for Relief. Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy. Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In Fritsch, the Ninth Circuit held that future attorneys' fees that are claimed but not accrued at the time of removal must nonetheless be considered in the amount in controversy. Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785 (9th Cir. 2018)

65.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. Longmire v. HMS Host USA, Inc., 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (internal citation omitted); Muniz, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

66.     In the class action context, courts have held that parties may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. Greene v. Harley Davidson, 2020 WL 3969285, n.4 (9th Cir. 2020); Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013); Rodriguez v. Cleansource, Inc., 2014 WL 3818304, at *4 (S.D. Cal. 2014); Marshall v. G2 Secure

Staff, LLC, 2014 WL 3506608 (C.D. Cal. 2014); Jasso v. Money Mart Exp., Inc., 2012 WL 699465 (N.D. Cal. 2012); Ramos v. Schenker, Inc., 2018 WL 5779978, at *3 (C.D. Cal. 2018); Ramirez v. Benihana Nat'l Corp., 2019 WL 131843, at *2 (N.D. Cal. 2019); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").

67.     Here, an additional minimum amount of **$6,811,075.60** must be included in the amount in controversy [($27,244,302.40 x 25% = $6,811,075.60)]. As such, the total amount in controversy, including attorneys' fees, would be **$34,055,378.00** during the relevant time period, plus some additional unascertained amount in allegedly unreimbursed expenses.

68.     For all of the forgoing reasons, the amount placed in controversy by Plaintiff's Complaint is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.

**C.     No CAFA Exceptions Apply**

69.     CAFA contains certain exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4). None of these exceptions are applicable here.

70.     All of the enumerated exceptions only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(3), 1332(d)(4)(A)(i)(II), 1332(d)(4)(B). Here, the action was originally filed in California, and as detailed above in Section III, Defendant is and has not been a citizen of California. As such, these exceptions do not apply.

/ / /

/ / /

71.    Accordingly, because diversity of citizenship exists and the amount in controversy exceeds $5,000,000.00, this Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).

### III.    VENUE IS PROPER

72.    Venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 1391(a), 1441, 1446(a), and 84(c)(2). This action originally was brought within a county encompassed by the Southern District of California—the Superior Court of the State of California, County of San Diego. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### IV.    NOTICE OF REMOVAL

73.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of the removal will be served upon counsel for Plaintiff and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of California, County of San Diego, as required by 28 U.S.C. § 1446(d).

### V.    CONCLUSION

74.    For all the reasons identified above, Defendant respectfully requests that this action now pending before the Superior Court of the State of California for the County of San Diego be removed to the United States District Court for the Southern District of California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2    Dated: November 30, 2023        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4

5                                    By        /s/ Devin S. Lindsay
                                         _____
6                                               ROBERT MUSSIG
                                                DEVIN S. LINDSAY
7                                               EMMA HUSSEMAN
                                          Attorneys for Defendant
8                                       GAT AIRLINE GROUND SUPPORT, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28